IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

| | |
|---|---|
| HAPAG-LLOYD AG, | ) |
| Plaintiff, | ) **C V 4 1 4 - 1 3 3** |
| vs. | ) Case No. _____ |
| FLAMINGO FOOD & BEVERAGE, INC., | ) |
| Defendant. | ) |

## COMPLAINT

NOW COMES HAPAG-LLOYD AG, Plaintiff in the above-styled action, and files this its Complaint against Defendant Flamingo Food & Beverage, Inc., respectfully showing the Court as follows:

### PARTIES AND JURISDICTION

1. This is an admiralty and maritime claim under 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

2. Plaintiff Hapag-Lloyd AG ("Plaintiff") is a German corporation with its principal place of business in Germany. Plaintiff is qualified to do business in Georgia and maintains a place of business in Savannah, Georgia.

3. Defendant Flamingo Food & Beverage, Inc. ("Defendant") is a Florida corporation with its principal place of business in Florida.

4. Defendant maintains, upon information and belief, a distribution center in Savannah, Georgia.

## BACKGROUND

5. On June 20, 2013, two oceangoing shipping containers with identifying numbers HLXU6299550 and HLXU8172733 (the "Containers"), containing a shipment of juice boxes (the "Goods") were tendered to Plaintiff at Port Said in Dammietta, Egypt for shipment onboard vessel M/V APL ATLANTA from Egypt to Georgia.

6. Plaintiff, as "Carrier," issued its bill of lading number HLCUMER130600809 (the "Bill of Lading") and by the terms of the Bill of Lading, Plaintiff contracted to and did in fact carry the Goods from Egypt to Georgia. A true and correct copy of the Bill of Lading is attached as Exhibit A.

7. Both of the Containers qualified as "shipper-packed containers" under Clause 8 of the Bill of Lading, which provides as follows:

> **8. Shipper-Packed Containers**
>
> If a Container has not been packed by or on behalf of the Carrier:
>
> (1) the Carrier shall not be liable for loss of or damage to the Goods caused by:
>
> (a) the manner in which the Container has been packed or
> (b) the unsuitability of the Goods for Carriage in the Container supplied or
> (c) the unsuitability or defective condition of the Container or the incorrect setting of any refrigeration controls thereof, provided that, if the Container has been supplied by or on behalf of the Carrier, this unsuitability or defective condition would have been apparent upon inspection by the Merchant at or prior to the time when the Container was packed or
> (d) packing refrigerated Goods that are not at the correct temperature for Carriage.
>
> (2) the Merchant shall indemnify the Carrier against any loss, damage, liability or expense whatsoever and howsoever arising caused by one or more matters referred to in Clause 8(1).

8. Clause 1 of the Bill of Lading defines "Merchant" to include "the shipper, holder, **consignee**, [or] receiver of goods or of this Bill of Lading." (Exhibit A, ¶ 1) (emphasis added).

9. Defendant was listed as the Consignee, Notify Party and Receiver of the Goods on the face of the Bill of Lading and thus qualified as a Merchant thereunder.

10. Defendant accepted and indorsed the Bill of Lading, indicating its agreement to the Bill of Lading's terms.

11. Clause 12 of the Bill of Lading, entitled "**Merchant's Responsibility**," states:

> (1) All persons coming within the definition of Merchant in Clause 1 shall be jointly and severally liable to the Carrier for the fulfillment of all obligations and warranties undertaken by the Merchant either in this Bill of Lading, or required by law. The Merchant shall indemnify the Carrier against all loss, damage, expenses and fines, arising or resulting from any breach of these obligations and warranties.

12. Prior to being tendered to Plaintiff, the Goods were initially received pursuant to the Bill of Lading at the designated port of loading in Mersin, Turkey, and then transported by land from the Turkish shippers facility and loaded onboard the OOCL VANCOUVER on June 16, 2013.

13. The containers were carried via the OOCL VANCOUVER to Dammietta, Egypt, where they were discharged in order to be staged prior to being transloaded onboard the M/V APL ATLANTA in Port Said.

14. On information and belief, during the staging of the Containers in Dammietta, the Goods were subjected to severe temperatures exceeding the 120° F temperature the Goods were designed to sustain.

15. The Goods were loaded on the M/V APL ATLANTA on June 20, 2013, at which time the vessel embarked toward the Goods' destination at the Port of Savannah.

16. During a routine inspection on June 24, 2013, the Chief Officer detected a strong odor coming from the hold. Upon further inspection, he discovered liquid leaking from Container HLXU6299550.

17. Upon arrival and discharge of the Containers in the Port of Savannah on or about July 7, 2013, it was discovered that the cargo inside container HLXU8172733 had also sustained similar ruptures and leakage.

18. Containers HLXU6299550 and HLXU8172733 were discharged on our about July 7, 2013, and taken to containment trays in the Georgia Ports Authority Garden City terminal's container stacks where they were cleaned and decontaminated by Moran Environmental Recovery.

19. The Containers were then staged in a warehouse where the contents of the Containers could be removed, and the salvageable portions thereof could be transloaded into replacement containers.

20. The stevedoring company Ports America carried out the discharge, containment and transload of the subject cargo.

21. While the Containers were in the containment trays in the Georgia Ports Authority stacks, and again when the Containers were stored in the warehouse, a marine surveyor commissioned by Plaintiff was able to observe the condition of the Goods and the nature of their stowage within the Containers.

22. The Plaintiff was contacted before the conduct of this inspection and was invited to attend and / or send a representative to participate in the survey jointly. The Plaintiff elected not to attend or send a representative.

23. It was determined during the survey that the rupture of the Goods and resulting leakage out of the Containers was attributable to a failure to properly brace, block and otherwise secure this palletized cargo inside these shipper-packed containers.

24. Plaintiff was forced to incur significant costs to clean the vessel and the Containers as a result of the improper stowage of the Goods inside the Containers.

25. As a result of the improper stowage of the Goods inside the Containers, Plaintiff was forced to pay Moran Environmental Recovery $39,455.50 to clean and decontaminate the vessel.

26. As a further result of the improper stowage of the Goods inside the Containers, Plaintiff was forced to pay Ports America $16,253.04 to discharge, stage and clean the Containers in the containment trays, as well as to transload the Goods into new containers at the warehouse.

27. Plaintiff has thus incurred a total of $55,708.64 in costs in connection with this matter.

28. On August 12, 2013, and November 14, 2013, Plaintiff sent notice and demand to Defendant and its insurer, The Hartford Insurance Company, seeking reimbursement for Plaintiff's costs and expenses associated with this matter. (See Exhibits B and C, attached herewith).

29. As of the date of this Complaint, no payments have been made by or on behalf of Defendant to Plaintiff, despite repeated demands for payment.

## COUNT I

## INDEMNITY

30. Plaintiff repeats and incorporates each of the foregoing Paragraphs as if fully restated herein.

31. The Bill of Lading is valid and supported by proper consideration, and is enforceable against Defendant as a party thereto.

32. Plaintiff has incurred a total of $55,708.64 in costs resulting from the improper manner in which the Containers were packed.

33. By reason of the premises, Defendant, as Merchant, is contractually obligated to pay Plaintiff's resulting damages and expenses as a result of the indemnity obligations it undertook by agreeing to Clause 8 of the Bill of Lading.

WHEREFORE, Plaintiff prays for the following relief:

(a) Damages in the amount of $55,708.64, plus interest;

(b) An award of Plaintiffs' attorneys' fees, costs and expenses in bringing and prosecuting this action; and

(c) Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 24th day of June, 2014

        HUNTER, MACLEAN, EXLEY & DUNN, P.C.

        /s/ Colin A. McRae
        Colin A. McRae
        Georgia Bar No. 499045

        *Attorneys for Plaintiff*

200 E. Saint Julian Street
Post Office Box 9848
Savannah, GA 31412-0048
(912) 236-0261
cmcrae@huntermaclean.com